# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher M. Erb,                                 :
                         Appellant                  :
                                                    :
               v.                                   :
                                                    :  No. 647 C.D. 2019
                                                    :  Argued: December 10, 2019
City of Lancaster                                   :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA McCULLOUGH, Judge
            HONORABLE ANNE COVEY, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                         FILED: January 6, 2020


Christopher M. Erb (Erb) appeals from the Court of Common Pleas of Lancaster County's (trial court) Order granting summary judgment in favor of the City of Lancaster (City) on Erb's promissory estoppel claim and dismissing Count II of Erb's Complaint. After the trial court issued its Order, this matter proceeded to a bench trial on Count I of Erb's Complaint, which was for breach of contract. The trial court entered judgment in Erb's favor on the contract claim, which the City appealed to this Court. In *Erb v. City of Lancaster* (Pa. Cmwlth., No. 1421 C.D. 2017, filed October 11, 2018), *petition for allowance of appeal denied*, (Pa., No. 732 MAL 2018, filed November 1, 2018) (*Erb I*), we reversed the trial court's order entering judgment on the contract claim and remanded for the trial court to dismiss the breach of contract claim, which it did. Erb now seeks to appeal the dismissal of his promissory estoppel claim. He argues that the trial court erred in

dismissing the claim because the promise required to establish a claim for estoppel was separate and apart from the contract claim. Upon review, we affirm.

## I. BACKGROUND

In *Erb I*, this Court set forth the underlying facts of this case as follows:

> In April 2016, Erb, a police officer with the City from September 5, 1989, until December 31, 2009, filed a Complaint against the City seeking damages for breach of contract and estoppel based on the City having allegedly promised to pay him, as part of its Early Retirement Incentive Program, a monthly pension benefit of $4382.30 beginning on September 5, 2014. However, Erb alleged, the City has been paying him a monthly pension benefit of only $3342.12.
>
> The City filed a Motion for Summary Judgment, which the trial court granted in part and denied in part. The trial court dismissed Erb's cause of action for estoppel. Thereafter, the matter proceeded to a one-day, non-jury trial on the contract claim only.
>
> At trial, the following testimony and evidence was presented. In November 2009, due to the national fiscal crisis resulting in the loss of revenue to the City and "the loss of a police service contract with Lancaster Township," the City, in an attempt to reduce its staff and avoid layoffs of police, devised the Early Retirement Incentive Program. The Early Retirement Incentive Program was offered to two groups of officers, those with 25 years or more of service, and those, such as Erb, with more than 20 years of service but less than 25 years of service. Police officers with 25 years or more of service were offered an incentive to retire of $1000 per year of service payable in a lump sum and would begin to collect their pensions upon their retirement. Police officers with more than 20 years of service but less than 25 years of service were offered payment for accrued unused paid time off (PTO), post-employment medical benefits, and a Retirement Incentive Payment (Option A). The Confidential Separation Agreement and General Release (the Contract), provided to Erb, described the terms of the Early Retirement Incentive Program as follows:
>
>> 2. <u>Payments and Benefits</u>. In consideration of the releases herein by Releasors and the warranties and

2

representations of Employee, Employer [(the City)] agrees as follows:

    a. <u>Retirement Incentive Payment</u>. Employer agrees to pay Employee the lump sum of **$140,073.795**, less payroll taxes and other legally mandated withholdings ("the Retirement Incentive Payment"). **The precise calculation and formula used to determined [sic] the amount of your Retirement Incentive Payment is attached hereto as Exhibit A**.

***

    c. <u>Payment for Accrued Unused PTO</u>. Employer agrees to pay Employee for any accrued but unused PTO to which Employee may be entitled . . . . Pursuant to the terms of this Paragraph, you shall receive an estimated payment in the amount of **$14,263.12**, less payroll taxes and other legally mandated withholdings, for all accrued, unused PTO to which you are entitled.

    d. <u>Benefits</u>. Employees entitled to post-employment medical benefits pursuant to an applicable collective bargaining agreement will continue to receive their Employer-sponsored health benefits for any term outlined in the applicable collective bargaining agreement . . . .

***

    f. <u>No Other Benefits</u>. Employee shall have no right to receive any further payment or benefit arising from his or her employment relationship with Employer except those benefits and payments described herein, those required by law . . . or vested benefits under any Employer retirement plan.

***

3

3. Adequate Consideration. You agree that (i) the consideration and payments made to you by Employer pursuant to this Agreement represent the sole and exclusive payments and undertakings to be provided to you; (ii) said payments include any and all outstanding and accrued compensation, wages, and benefits that may be due and owing you; (iii) with the exception of any vested retirement benefits, Employer has no further obligation to provide Employee with any compensation of any sort, or any non-monetary or monetary benefits in addition to that which is set forth in Paragraph No. 2, above; and (iv) the aforementioned payments are in excess of what you otherwise would have been entitled to and constitute good and sufficient consideration for this Agreement.

Attached to the Contract were three exhibits. Relevant here was Amended Exhibit A, entitled "**Retirement Incentive Payment Calculation**." Erb's Retirement Incentive Payment was $137,862.45, which, as Amended Exhibit A indicated, was calculated based on multiplying Erb's monthly pension benefit as of December 31, 2009 ($3342.12), the date of his retirement, by the number of months to his 25th service anniversary date (55). This figure ($183,816.60) was then multiplied by 75% to equal the amount of the Retirement Incentive Payment. Also on Amended Exhibit A under a separate heading, "Pension Calculation," was Erb's 25th service anniversary date, listed as September 5, 2014, and "**Monthly Pension Benefit Amount To Be Received Commencing On 25 Year Anniversary Date**" (25 Year Pension Benefit) listed as **$4382.30**. Erb **acknowledged that there was nothing in the Contract that indicated the amount of his monthly pension benefit;** that figure appeared only on Amended Exhibit A.

The idea behind the Retirement Incentive Payment, the City's Business Administrator Patrick Hopkins (Hopkins) explained, was to "bridge the gap" from the time these officers retired until [] they started receiving their pensions on their 25th service anniversary date. Hopkins testified that there was nothing in the Contract that proposed awarding an officer a greater pension benefit, or commencing payment of an officer's pension benefit, before the officer's 25th service anniversary date. The City designed the Early Retirement

4

Incentive Program so that it would not impact the pension plan, Hopkins testified.

In early December 2009, Hopkins held an information session with officers who were eligible to retire early. Erb, who was then the President of the City's Police Officers' Association (POA) and involved in bargaining over the Early Retirement Incentive Program, attended the session. According to Hopkins, during the session it became apparent that the officers were confused about the figure listed as the 25[-]Year Pension Benefit. Hopkins explained to the officers, he testified, that the 25[-]Year Pension Benefit "is not your pension benefit. This is what your pension benefit would be if you didn't take this plan and if you left after 25[-]years of service and we add[ed] three-percent annual increases." Hopkins explained during trial that the 25[-]Year Pension Benefit figure was included in the Contract on legal advice, so that officers would be aware of the difference in their pension benefit based on whether they accepted early retirement or waited until their 25th service anniversary date. According to Erb, however, while Hopkins claimed "that there was confusion, it wasn't on [Erb's] part. [He] understood what [Hopkins] said in that meeting and so did other [officers]."

Following the information session, discussions between the POA and the City, in which Erb participated, resulted in the City proposing an alternative, known as Option B, to incentivize early retirement. Under Option B, officers were offered payment for accrued unused PTO and permitted to retire on January 31, 2010, at which point they would immediately begin receiving their pension benefits based on a calculation of those officers having served 25 years. The City would contribute to the pension fund for the cost of Option B. Hopkins explained that in order to change a pension benefit, as Option B proposed, the City had to have an actuarial evaluation and the City Council had to amend the City Code. Option B did not include the Retirement Incentive Payment as Option A did.

On January 15, 2010, the deadline, Erb signed the Contract, accepting Option A. However, on January 18, 2010, believing that he was eligible for Option B, Erb e-mailed Hopkins what he believed would be his monthly pension benefit, listing it as $3817.08.

On January 19 or 20, 2010, after he signed the Contract, Erb met with a Human Resources Generalist to review his paperwork. The Human Resources Generalist reviewed the Contract and, turning to Amended Exhibit A, put a box in ink around the $4382.30 figure and told him that this would be his pension benefit.

Ultimately, the City Council approved Option B but only for officers with 21 years of service or more, which excluded Erb. By the time Option B was adopted, Erb testified, he was retired.

In August 2014, Erb met with the Chief of Finance for the City to sign paperwork needed for Erb to begin receiving his monthly pension benefit. Erb asked the Chief of Finance what his pension benefit would be for September since it was prorated based on his 25th service anniversary date falling on September 5. The Chief of Finance reviewed Erb's file and, while looking at Amended Exhibit A, said his pension benefit for September would be the $4382.30 figure, prorated for 25 days, which, after deductions, was the amount Erb received in September.

In October, however, Erb received a gross amount of only $2452.92. Erb inquired and received a memorandum from Hopkins explaining the discrepancy. In that memorandum, after outlining the Early Retirement Incentive Program and the calculation of Erb's Retirement Incentive Payment, Hopkins explained that the Payroll Department used the wrong figure on Amended Exhibit A. The Payroll Department used the $4382.30 figure, which, Hopkins stated, was the figure Erb would have received had he not retired early and continued working until his 25th service anniversary date, when the Payroll Department should have used the $3342.12 figure, which was Erb's pension benefit as of December 31, 2009. The $4382.30 figure, Hopkins stated, was based on Erb receiving a three-percent salary increase each year until he reached his 25th service anniversary date. Going forward, Erb would receive the gross amount of $3342.12.

Erb testified that had he known his pension benefit was going to be only $3342.12, he would not have retired early. Erb made his decision to retire early, he testified, based on him receiving $4382.30. Erb noted that the Retirement Incentive Payment he received was less than had he continued working for another five years. Erb also noted

6

that he would have preferred to retire early under Option B, which, he agreed with the City's Counsel, was a better financial outcome for him.

The City presented expert testimony from Thomas Zimmerman, the actuary for the City's pension plans, who testified that the correct calculation of Erb's monthly pension benefit was $3342.12 and, if the City was ordered to pay Erb a monthly pension benefit of $4382.30, the auditor general would find the City in violation of its pension plan because that benefit would be contrary to the collective bargaining agreement and the City Code. Further, if Erb was awarded a pension benefit of $4382.30, in order for the City to cover the increased cost, it would have to contribute, based on actuarial projections of Erb's life expectancy, another $20,450 per year for 14 years.

*Erb I,* slip op. at 2-8 (alterations in original) (internal record citations and footnotes omitted).

Following the trial, the trial court concluded that the Contract contained a patent ambiguity of what pension amount Erb was to receive and resolved the ambiguity in favor of Erb. We summarized the trial court's findings as follows:

[t]he trial court credited Erb's testimony that he "would not have chosen to retire early had he known" he was to receive a monthly pension benefit of only $3342.12, and concluded that Erb had "**reasonably relied** on the written offer" the City made to him which "**induced** [Erb] to accept the offer[.]" Then, the trial court, after reciting the principles of law governing whether a contract is ambiguous, concluded that the Contract and its exhibits "contain[ed] a patent ambiguity of what pension amount Erb [was] to receive[,]" whether it was $4382.30 or $3342.12.

*Id*. at 9 (quoting trial court Findings of Fact (FOF) ¶¶ 42-43 and Conclusion of Law ¶ 3) (alterations in original) (internal record citations omitted). In addition, the trial court stated that the proposed Contract's Amended Exhibit A included a

7

monthly pension benefit of $4382.30 and that a City Human Resources Generalist hand drew an ink box around the $4382.30 on Amended Exhibit A, which induced Erb to accept the offer on January 15, 2010, by executing the Contract. (FOF ¶¶ 32, 40, 43.) Accordingly, the trial court, by order dated September 11, 2017, entered judgment in Erb's favor for more than $37,000 for past benefits plus interest, which the City appealed to this Court.

We reversed. After summarizing general contract law principles, we concluded that the Contract and its exhibits "are clear and unequivocal and do not provide for the payment of a monthly pension benefit of $4382.30." *Erb I*, slip op. at 14. We explained the Contract provided for "three forms of consideration: (1) payment for accrued unused PTO; (2) post-employment medical benefits; and (3) a lump sum payment of $140,073.795 in the form of a Retirement Incentive Payment." *Id.* (emphasis omitted). This Court also ruled, contrary to the trial court, that Amended Exhibit A was not a promise and whether Erb was induced was not part of the court's consideration of his breach of contract claim. Specifically, we stated:

> The only reference to a monthly pension benefit of $4382.30, again, is in Amended Exhibit A, where under a separate heading, "Pension Calculation," Erb's 25th service anniversary date is listed as September 5, 2014, and "Monthly Pension Benefit Amount To Be Received Commencing On 25 Year Anniversary Date" is listed as $4382.30. This sole reference to $4382.30, in the absence of any promise to pay anything other than the three forms of consideration listed in the Contract, does not amount to a promise to pay. Reading the Contract and its exhibits together, the reference to $4382.30 and its accompanying language was for informational purposes, and not a promise to pay.

> We can understand, in the absence of any explanation, how Erb, in reading this Contract and its exhibits, might have expected his

8

monthly pension benefit to be $4382.30 when he reached his 25th service anniversary date. Both Erb and the trial court, in part, respectively litigated and adjudicated this matter as if Erb was claiming that he had been negligently induced into accepting the Contract. However, the only claim at issue before the trial court, and before us, is Erb's breach of contract, which is governed by the terms of the [C]ontract, not reliance or inducement. The trial court had dismissed Erb's estoppel claim on the City's Motion for Summary Judgment from which there has been no cross-appeal. Again, when the entire Contract and its exhibits are carefully examined, it is clear that there is no promise in the Contract or its exhibits to pay Erb a monthly pension benefit of $4382.30, and this figure was included on Amended Exhibit A for informational purposes.

*Id*. at 15-17 (footnotes and citations omitted). Accordingly, we reversed the trial court's order and remanded with instruction to dismiss the cause of action for breach of contract.

Following our decision in *Erb I*, Erb filed a petition for allowance of appeal to the Supreme Court. In the interim, on October 23, 2018, the trial court, in response to this Court's order in *Erb I*, issued an order dismissing the breach of contract cause of action, which Erb attempted to appeal. This Court vacated the trial court's October 23, 2018 order on the basis that the trial court lacked jurisdiction to enter it because the record had not been remanded since Erb filed a petition for allowance of appeal with the Supreme Court. The Supreme Court ultimately denied Erb's petition for allowance of appeal. The trial court, upon remittance of the record, entered an order on April 29, 2019, dismissing Erb's breach of contract claim, in accordance with this Court's order in *Erb I*. On May 29, 2019, Erb filed a notice of appeal.

9

## II. ARGUMENTS

On appeal, Erb argues the trial court erred in granting summary judgment in favor of the City on his promissory estoppel claim.[1] Specifically, Erb asserts that the trial court found the essential elements of promissory estoppel have been met and still dismissed Erb's claim on the mistaken assumption that an estoppel claim cannot lie where there is a consideration for a contract. Erb asserts that this Court, in *Erb I*, "made it clear . . . that, had the estoppel claim been properly before it at the time, it would have sustained the claim." (Erb's Brief (Br.) at 13.) According to Erb, the trial court concluded

> estoppel would not lie here because while there was a promise that could have been reasonably expected to induce reliance, and Erb both relied on that promise and took the expected action, the promise as to the [pension's] amount . . . was integral to the [C]ontract that it found to have existed.

(*Id*. at 14.) Furthermore, Erb asserts that the trial court erred when it "misperceived that the promise was not separate from the [C]ontract." (*Id*. at 11.) Erb asserts that this Court "confirmed the existence of the [C]ontract, but contrary to the perception of the trial court, the Commonwealth Court also held the promise of an 'enhanced' pension was not part of that [C]ontract." (*Id*. at 15 (emphasis omitted).) In addition, Erb argues there are two promises that were made outside of the Contract that induced him to "substantially change position as to the continuation of his employment." (*Id*. at 16.) These promises were: (1) Amended

---

[1] In our review of a trial court's grant of summary judgment, this Court is to determine whether there was an error of law or an abuse of discretion. *Irish v. Lehigh Cty. Hous. Auth.*, 751 A.2d 1201, 1203 n.4 (Pa. Cmwlth. 2000). Upon review, "we must examine the record in a light most favorable to the non-moving party, accepting as true all well-pleaded facts and reasonable inferences to be drawn therefrom." *Id*.

Exhibit A and (2) the Human Resources Generalist's reiteration of the amount in Amended Exhibit A. (*Id.* at 16 n.2.) Erb argues that the trial court misapprehended the scope of the agreement and the limitation of consideration, and thus did not consider the promises that were separate and distinct from the agreement. Erb concludes that all of the elements of estoppel were met and the promise is separate from the Contract; therefore, the trial court erred in dismissing the promissory estoppel claim.

The City notes that this Court has held that the Contract was complete and supported by consideration. The City argues that this Court also ruled that Amended Exhibit A was not a promise and cannot support a claim of promissory estoppel. In addition, the City also argues that Erb's allegation that the Human Resources Generalist's circling of the $4382.30 figure constitutes a promise is not correct. The City asserts that Erb signed the Contract before he met with the Human Resources Generalist; therefore, the circling of the amount cannot constitute a promise that established his reliance. The City also contends that the Human Resources Generalist did not specifically state that Erb was entitled to the $4382.30, but instead only circled the number. The City asserts that Erb's promissory estoppel claim cannot succeed. In its brief, the City additionally argues that Erb has waived his right to appeal the trial court's Order because he did not file a cross-appeal of the Order in *Erb I* when the Order was initially before this Court. (City's Br. at 10.)

## III. **DISCUSSION**

Promissory estoppel, or detrimental reliance, allows a person or entity to enforce a "contract-like promise," which would not be "[]enforceable under

11

contract law principles" because of the lack of consideration. *Peluso v. Kistner*, 970 A.2d 530, 532 (Pa. Cmwlth. 2009). In order to succeed on a claim of promissory estoppel, the aggrieved party must prove that: "(1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Id.* at 533 (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)). The three elements are to be "strictly enforced to guard against the 'loose application' of promissory estoppel." *Id.* (quoting *Fried v. Fisher*, 196 A. 39, 43 (Pa. 1938)).

The parties in this case focus on whether a promise was made outside the language of the Contract, meaning a promise was made in Amended Exhibit A itself, or by the City's Human Resources Generalist. In the trial court's Order, the trial court stated the following, in part, about the promissory estoppel claim:

> Even accepting as true [] Erb's allegations, the court finds that his claim for estoppel fails as a matter of law. The representation made by human resources regarding the amount of [] Erb's monthly pension was done within the larger context of the [Contract]–and for this there was adequate consideration on both sides. A claim for estoppel is therefore inappropriate, and this portion of the City's motion shall be granted.

(Reproduced Record at 129a.)

In *Erb I*, we held that Amended Exhibit A made no promise for a monthly pension benefit of $4832.30, instead it was just "for informational purposes." *Erb I*, slip op. at 16-17. We held:

12

> This sole reference to $4382.30, in the absence of any promise to pay anything other than the three forms of consideration listed in the Contract, **does not amount to a promise to pay.** Reading the Contract and its exhibits together, the reference to $4382.30 and its accompanying language was for informational purposes, and **not a promise to pay.**

*Id*. at 16 (emphasis added). Because we have previously determined that Amended Exhibit A is not a promise, contrary to Erb's position here, Amended Exhibit A cannot be a promise to satisfy the first element of promissory estoppel.

In addition, Erb argues that the Human Resources Generalist's actions, **after** he signed the Contract, constituted a promise upon which he relied. The Human Resources Generalist reviewed the Contract and, on Amended Exhibit A, drew a box around the $4382.30 figure. Upon doing this, the Human Resources Generalist also "told [Erb] that this would be his pension benefit." *Id.* at 7. However, this promise could not have reasonably been relied upon to induce Erb's action. The box drawn by the Human Resources Generalist was completed at a meeting that occurred **after** Erb signed the Contract; therefore, he could not have relied on the Human Resources Generalist to induce his own action in signing the Contract. *Id*. at 6-7.

Erb quotes the following language from our opinion in *Erb I* in support of his promissory estoppel claim: "We can understand, in the absence of any explanation, how Erb, in reading this Contract and its exhibits, **might have expected** his monthly benefit to be $4382.30 . . . ." (Erb's Br. at 13 (quoting *Erb I*, slip op. at 16 (emphasis added)).) Erb states that, based off this language, "had the estoppel claim been properly before [us] at the time, [we] would have sustained the claim." (*Id*.) Our prior opinion only speaks to Erb's potential expectation, not that there was a promise and reliance on that promise, as promissory estoppel requires.

13

"[I]t is clear that there is no promise in the Contract or its exhibits to pay Erb a monthly pension benefit of $4382.30." *Erb I*, slip op. at 17. Therefore, Erb cannot use our prior opinion in *Erb I* to conclude that we would have sustained his claim. Like *Erb I*, we understand his expectations and the miscommunications surrounding this case; however, we cannot conclude that Erb has succeeded in proving promissory estoppel in this case for lack of promises by the City.

The City has also argued that Erb waived his right to appeal the trial court's Order because Erb did not file a cross-appeal in the first instance in *Erb I*. We need not address this argument because this appeal does not succeed on its merits.

## IV.   CONCLUSION

Accordingly, this Court concludes that, because there was no promise upon which Erb could rely, the elements for promissory estoppel are not satisfied. The trial court did not err in granting summary judgment on Erb's promissory estoppel claim.

_____
**RENÉE COHN JUBELIRER,** Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher M. Erb,                          :
                    Appellant               :
                                            :
             v.                             :
                                            :    No. 647 C.D. 2019
                                            :
City of Lancaster                           :

# **O R D E R**

    **NOW**, January 6, 2020, the Order of the Court of Common Pleas of Lancaster County, entered in the above-captioned matter, is **AFFIRMED.**

 

_____
**RENÉE COHN JUBELIRER,** Judge